**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| EDNA GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:08-CV-364-TFM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and Title XVI, 42 U.S.C. §§ 1381 *et seq.*, Edna Green ("Green") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Green, age 46 at the time of the hearing, earned a GED certificate. Green's past work

experience includes employment as a gate guard.[1] She has not engaged in substantial gainful work activity since the alleged onset date of August 22, 2004. Green claims she is unable to work because of degenerative discs in her back, asthma, carpal tunnel syndrome, arthritis, and migraines.[2] The ALJ found Green was severely impaired by lumbar degenerative disc disease, right carpal tunnel syndrome, and asthma.[3] The ALJ determined Green did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[4] The ALJ found Green's medically determinable impairments could reasonably be expected to product the alleged symptoms, but her testimony concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.[5] The administrative finding on the credibility issue was made after noting Green's activities of daily living were inconsistent with her complaints of pain and lack of hospitalization for pain or asthma.[6]

Green began treatment with Dr. Paul Maddox shortly after her onset date in September, 2004. Dr. Maddox found a moderately degenerative disk at L4-5 wtih no significant disk protrusion, foraminal crowding, or stenosis. He permitted Green to work but

---

[1] R. at 586.

[2] R. at 149.

[3] R. at 22.

[4] R. at 28.

[5] R. at 30.

[6] R. at 29-30.

limited her lifting capacity to 40 pounds with no repetitive bending, twisting, and lifting.[7] Green sought a second orthopedic opinion at the Lyster ACH, Ft. Rucker, Alabama in December, 2004. Green was released without limitations, and it was also noted that her asthma is well controlled in warmer climates, such as Alabama.[8] A consultative examination by Dr. Willis Crawford in January, 2005, found Green could tandem walk, heel toe walk, hop, and squat stand. Dr. Crawford opined Green could perform "usual work-related activities."[9] Green returned to Lyster ACH for treatment of lumbago in March-April of 2005 and was released without limitation.[10] Green received epidural injections for pain from Dr. David Herrick between February and August, 2005.[11]

In September, 2005, Green began treatment with Dr. J. Kesserwani, a neurologist, for migraine headaches and carpal tunnel syndrome. Testing ordered by Dr. Kesserwani confirmed low grade chronic right carpal tunnel syndrome.[12] In February, 2006, Green's examination was normal with the exception of muscle spasms in her back.[13] In June, 2006, Dr. Kesserwani completed a Physical Capacities Examination (PCE) wherein he concluded

---

[7] R. at 297.

[8] R. at 383-84.

[9] R. at 307-08.

[10] R. at 348, 363.

[11] R. at 494-502.

[12] R. at 541-43.

[13] R. at 570.

4

Green could lift and carry up to 20 pounds; sit four hours and stand or walk four hours in an eight-hour workday; frequently push and pull and operate a motor vehicle; occasionally climb, balance, perform fine manipulation, bend, stoop, work in areas with environmental problems, and work around hazardous machinery.[14]  Dr. Kesserwani also found that though Green did have pain, it would not prevent her adequate performance of most tasks.  A second PCE was conducted by Capt. Kenya Brooks.  This PCE severely limited all of Green's work abilities except gross and fine manipulation.[15]

The ALJ found Green was capable of light work on a regular and sustained basis.  The RFC statement found Green could stand and/or walk up to six hours in an eight hour day, as well as sit for up to four hours (with normal breaks).  The ALJ found Green's manipulative capacity permitted her to occasionally reach and perform fine manipulation.  The RFC included environmental restrictions such as avoidance of concentrated exposure to fumes, odors, dusts, poor ventilation and workplace hazards.[16]  Green's ability to perform light work would permit her to return to her past relevant work as a gate guard, as the occupation is generally performed.  The ALJ specifically found Green's past work did not involve exertional or non exertional requirements in excess of her RFC.[17]  These findings led the ALJ

---

[14]R. at 527.

[15]R. at 529.

[16]R. at 28.

[17]R. at 35-36.

to conclude that Green is not disabled under the Act.[18]

### III. ISSUE

Green raises a single issue for judicial review:

Whether the ALJ's RFC finding is supported by substantial evidence.

### IV. DISCUSSION

**The ALJ's RFC Finding is Supported by Substantial Evidence.**

Green argues the ALJ's RFC finding of light work activity lacks the support of substantial evidence because his decision did not include a narrative discussion explaining why his conclusions differed from those of her treating physician. The Commissioner responds the ALJ's decision adequately described the RFC assessment and explained his reasons for not adopting the treating physician's opinion in its entirety.

Green's claim of error cites the subsection of Social Security Ruling (SSR) 96-8p titled "Narrative Discussion Requirements." In this section, the SSA directs adjudicators to provide a narrative discussion explaining how medical and nonmedical evidence supports the RFC conclusions contained in their decisions. The ruling also requires an explanation of "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See* SSR 96-8p. Green's brief asserts the ALJ failed to discuss the impact of her severe impairments, *i.e.*, disc disease, carpal tunnel syndrome, and asthma, on her ability to perform light or sedentary work. This claim is unfounded, as the ALJ

---

[18]R. at 36.

plainly addressed the medical findings of each impairment in relation to Green's ability to work.[19]

The ALJ supported his findings by emphasizing there were no "objectively identifiable reasons why [Green] could not be expected to perform the exertional and nonexertional demands of light work" when he considered the "results of her pulmonary function studies, x-rays, MRIs and EMG/NCV tests."[20] The ALJ specifically addressed the indications of test results as they relate to her disc disease and carpal tunnel syndrome. Additionally, the ALJ discussed the positive impact of a southern climate on Green's asthsma.[21] The Court notes Green did not challenge the adequacy of the ALJ's narrative discussion, but simply claimed it did not exist. The record refutes that argument.

Green raises a more substantive argument to the ALJ's conclusions placing her abilities to stand and/or walk for six hours in an eight-hour day when Dr. H. Kesserwani, her treating physician, found her able to stand and/or walk for only four hours each.[22] Again, the record shows the ALJ explained why his findings differed from those of the treating physician. After acknowledging the general consistency of his final RFC determination with Dr. Kesserwani's, the ALJ noted the "additional abilities in terms of standing/walking . . . are corroborated by [Green's] EMG/NCV studies, which show only low grade radiculopathy,

---

[19]R. at 34.

[20]R. at 34.

[21]R. at 34.

[22]R. at 28, 527.

7

her normal gait, her unimpaired strength and her normal sensation."[23]  Again, the ALJ complied with SSR 96-8p by citing the record evidence which supports his decision, notwithstanding Green's claim that he failed to do so.

Green also alleges the ALJ did not properly consider the medical opinion of Dr. Kenya Brooks, another treating physician.  The ALJ decision noted his RFC determination was inconsistent with the physical capacities evaluation and clinical assessment of pain provided by Dr. Brooks.  In discussing these differences, the ALJ questioned Dr. Brooks's status as a treating physician due to evidence that "Dr. Brooks *never* even saw the claimant."[24]  The ALJ also noted Dr. Brooks's findings were not consistent with those by any other medical source.[25]  Upon consideration of the greater weight due opinions from treating physicians Maddox, a board-certified orthopedist, and Kesserwani, a board-certified neurologist, in contrast to that from Brooks, a family practitioner, the ALJ discredited her opinion.[26]  Further, the decision specifically refuted Dr. Brooks's assertion that Green's medications cause side effects that limit her ability to work, as the ALJ noted Green reported a positive response to her medications with no adverse side effects.[27]

The Court finds the ALJ complied SSR 96-8p by providing a narrative discussion of

---

[23]R. at 34.

[24]R. at 35, emphasis in original.

[25]R. at 35.

[26]R. at 35.

[27]R. at 35.

evidence supporting the RFC finding announced therein. The discussion adequately explained material inconsistencies or ambiguities in the case record, and cited substantial evidence for his RFC determination. Accordingly, Green's claim of error must fail.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

Done this 8th day of January, 2009.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE